UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHADRIC LESTER,                    )
                                   )
          Plaintiff,               )
                                   )        No. 4:07CV01032 FRB
                                   )
     v.                            )
                                   )
                                   )
MICHAEL J. ASTRUE, Commissioner    )
of Social Security,                )
                                   )
          Defendant.               )


**<u>MEMORANDUM AND ORDER</u>**


          This matter is on appeal for review of an adverse ruling
by the Social Security Administration.  All matters are pending
before the undersigned United States Magistrate Judge, with consent
of the parties, pursuant to 28 U.S.C. § 636(c).

**I.    Procedural Background**

          Plaintiff  Chadric  Lester  ("plaintiff")  received  an
initial award of disability benefits on July 24, 2001, effective
January 14, 2000, due to an abdominal stab wound and subsequent
abdominal surgeries.  (Administrative Transcript, ("Tr.") 17, 32-
39.)  In a letter dated January 24, 2005, the Social Security
Administration ("SSA") advised plaintiff that it had determined
that, as of January 2005, his condition had improved to such an
extent  that  he  was  no  longer  disabled,  and  further  advised
plaintiff that his disability payments would cease as of March,

-1-

2005.    (Tr.  1000-1005.)    Upon  plaintiff's  request  for
reconsideration, a hearing was scheduled for April 19, 2005 before
Disability  Hearing  Officer  Shelia  Beggs.    (Tr.  999;  989-91.)
Plaintiff did not appear at this hearing, and it was thus noted
that plaintiff's case would be decided on the evidence of record.
(Tr. 991; 996.)  On April 20, 2005, Ms. Beggs issued a decision of
"not disabled."  (Tr. 992-96.)

Plaintiff subsequently filed a Request for a Hearing by
an administrative law judge ("ALJ"), and on October 31, 2005, a
hearing was held before ALJ Jane Pappenfus.  (Tr. 1132-49.)  On
January  9,  2006,  ALJ  Pappenfus  issued  her  decision  denying
plaintiff's claim.  (Tr. 14-25.)  Plaintiff filed a Request for
Review of Hearing Decision with defendant Agency's Appeals Council,
and on March 28, 2007, the Appeals Council denied plaintiff's
request for review. (Tr. 3-6; 10.)  The ALJ's decision thus stands
as the final decision of the Commissioner.  42 U.S.C. § 405(g).

## II.  Evidence Before the ALJ

A.    Plaintiff's Testimony

At  the  hearing  on  October  31,  2005,  plaintiff  was
unrepresented.  The ALJ advised plaintiff of his right to obtain a
representative, and plaintiff indicated he wished to proceed with
the hearing pro se.[1]  (Tr. 1136.)

Plaintiff testified that he was 36 years old, and had

---

[1]At present, however, plaintiff is represented by attorney Jeffrey J.
Bunten.

completed the twelfth grade.  (Tr. 1136-37.)  Plaintiff completed
some college work in 1990.  (Tr. 1140.)  Plaintiff was once self-
employed as an aerial photographer.  (Tr. 1137.)  When asked about
the relevant dates of such employment, plaintiff indicated that he
stopped this work two months before he was stabbed, but could not
remember that date.[2]  (Tr. 1137-38.)  Plaintiff also stated that he
and his boss had had a "continuing conflict of sometimes photos not
coming in", and that bad weather also kept him from working.   (Tr.
1137-38.)  Plaintiff testified that he never did aerial photography
after he was stabbed.  (Tr. 1138.)

Plaintiff testified that, in 2003, he began working for
Papa John's Restaurant as a delivery person, but stopped due to
back pain and a hernia.  (Tr. 1135, 1139.)  Plaintiff denied any
other periods of employment and denied filing for unemployment
benefits, but did state that he filed two workers' compensation
claims.  (Tr. 1141.)  One such claim was during his employment with
Papa John's, and was related to a back problem.  Id.  Plaintiff was
unsure of the date or the status of the claim.  (Tr. 1142.)  The
second was during his employment for ABC Pest Control, and was
related to a sprained ankle.  (Tr. 1141.)

Plaintiff testified that, two months prior to the
hearing, subsequent to an argument with his mother, he spent one

---

[2]The record indicates that plaintiff was stabbed on January 14, 2000.
(Tr. 640; 757-61.) The record also indicates that, at the time of the crime,
plaintiff was employed by Papa John's and by "Steak-Out" in Kansas City,
Missouri.  (Tr. 834.)

night in jail for disturbing the peace. (Tr. 1142.) Plaintiff denied any other involvement in the justice system. (Tr. 1143.)

Plaintiff identified the physical impairments that kept him from working as "lack of stomach muscles, hernias continuing and back muscles going out." Id. Plaintiff explained that, because his stomach muscles were weak, his back often went out. (Tr. 1144.) Plaintiff described an incident while sweeping at Papa John's in which he sprained his back, and had to visit the emergency room. (Tr. 1143.) Plaintiff indicated that the problem had resolved, but testified that he felt it could recur. (Tr. 1144.) Plaintiff testified that he did not have surgery scheduled for his hernia, but did have an appointment with a plastic surgeon scheduled for November 10. Id. Plaintiff asserted that he was not alleging any mental impairment. (Tr. 1145.)

Regarding his daily activities, plaintiff testified that, upon arising in the morning, he took care of his 18-month-old child, beginning when the child woke at 7:00 to 7:30 a.m. Id. Specifically, plaintiff testified that, as soon as he heard the child cry, he woke and rose to attend to the child's needs. (Tr. 1146.) Plaintiff testified that he also takes care of the house. Id. Plaintiff's wife, who is employed, handles the family's finances, does the shopping and laundry, and "everything that has to do with picking up things other than the child." Id. Plaintiff testified that his next-door neighbors did his yard work. (Tr. 1147.)

-4-

Plaintiff testified that he could stand for one to two hours; could walk a half of a mile; and sit for two hours. Id. Plaintiff testified that he could lift his child, who weighed between 30 and 50 pounds. Id. Plaintiff testified that he also sat in front of his computer doing sports-related things, corresponding with friends, and trying to get free things on the Internet. (Tr. 1147.) Plaintiff also recently investigated taking classes over the Internet in the areas of business administration and patenting inventions. (Tr. 1148.)

B. Medical Records

The record indicates that plaintiff was stabbed in the abdomen on January 14, 2000. (Tr. 625, 642.) Plaintiff was taken to North Kansas City Hospital in Kansas City, Missouri,[3] and underwent surgery after liver and stomach injuries were discovered. (Tr. 625; 646-49; 654-57; 956-59.) Plaintiff was subsequently stabilized and transferred to St. Luke's Hospital in Kansas City, and came under the care of Thomas S. Helling, M.D. (Tr. 625; 774.) During his hospital stay, plaintiff's condition worsened, and he underwent surgical procedures on January 25, 2000 and February 28, 2000. (Tr. 622-26; 627-30; 774-75; 785-86; 949-50.) Plaintiff improved, and was discharged on March 24, 2000 with skilled nursing services to help him with wound care and other medical needs. (Tr. 632; 772-73.)

---

[3]The record indicates that plaintiff was admitted under the alias "Jake Wilson" to protect his identity. (Tr. 625; 756.)

Plaintiff saw Dr. Helling on April 3, 2000, and was noted to be doing "reasonably well" at home, with an improved appetite and weight gain. (Tr. 626.) One of the drains that had been previously inserted was removed, and antibiotic treatment was noted to have been completed. Id. On April 5, 2000, a chest x-ray revealed that plaintiff had fluid in his chest cavity, and Dr. Helling recommended that the fluid be drained. (Tr. 623.) This procedure was performed on April 10, 2000. Id.

In a letter dated April 10, 2000, Dr. Helling wrote that plaintiff was recovering from extensive surgery which had seriously debilitated him, and that he should be considered totally disabled. (Tr. 636.)

Plaintiff returned to St. Luke's on April 14, 2000 with complaints of pain in his right upper quadrant, and drainage around the site of previously placed drains, which was found to be related to a recurrence of fluid in plaintiff's chest cavity. (Tr. 548-57.) On April 15, 2000, plaintiff underwent placement of a right-sided chest tube to drain the fluid. (Tr. 559; 825.) Plaintiff returned to St. Luke's on April 21, 2000 with complaints related to infection of the wound. (Tr. 560.) On April 24, 2000, plaintiff underwent exploratory liver surgery. (Tr. 561; 582-83; 624.) On April 28, 2000, plaintiff developed a hematoma which had to be drained. (Tr. 624.) Plaintiff was discharged on May 4, 2000 in fair condition, and instructed to avoid strenuous activity or lifting. Id.

The record indicates that plaintiff underwent physical therapy at St. Luke's Northland Home Care Services from May 5, 2000 through May 22, 2000. (Tr. 591-95.)

Plaintiff saw Dr. Helling on May 11, 2000 and was noted to be doing reasonably well, with no fever. (Tr. 622.) He remained on antibiotics. Id. Plaintiff's wound was healing, and his staples were removed. Id. Plaintiff was given Oxycodone[4] and Xanax.[5] Id.

On July 27, 2000, Janice Hendler, M.D. completed a physical residual functional capacity ("RFC") assessment. (Tr. 534-41.) Dr. Hendler opined that plaintiff could occasionally lift 20 pounds and frequently lift ten; could stand and/or walk for at least two hours in an eight-hour workday; could sit for six hours; and could push and/or pull without limitation. (Tr. 535.) Dr. Hendler found no postural limitations (including climbing, balancing, stooping, kneeling, crouching, and crawling), and no manipulative limitations. (Tr. 536-37.) In support thereof, Dr. Hendler noted plaintiff's multiple abdominal surgeries, and noted that plaintiff's allegations were credible. (Tr. 535-36; 539.) Dr. Hendler noted that improvement was expected, and that, as per Dr. Helling, plaintiff would be capable of "at least" sedentary

_____

[4] Oxycodone is an opiate analgesic used to relieve moderate to severe pain. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682132.html

[5] Xanax, or Alprazolam, is used to treat anxiety disorders and panic attacks. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a684001.html

work by January 2001. (Tr. 539) (emphasis in original). Dr. Hendler also noted that Dr. Helling had previously stated that he expected plaintiff to make a full recovery in one year. (Tr. 540.) Indeed, the record contains a letter from Dr. Helling indicating that plaintiff was expected to fully recover by January 2001, and should at that time be able to stand/walk at least two hours out of an eight-hour day; and sit for six hours. (Tr. 546.)

In a letter to Social Security Disability dated May 22, 2001, Steven M. Strasberg, M.D., wrote that plaintiff had been unable to work for the past year because of severe traumatic injury. (Tr. 171.) Dr. Strasberg also wrote that plaintiff was steadily recovering and gaining weight, and that he expected plaintiff to be able to return to work "very soon." Id. Dr. Strasberg further wrote that, because of the state of plaintiff's abdominal wall, he should not undertake work involving heavy lifting or straining. Id.

Records from St. Luke's Hospital indicate that plaintiff was admitted on August 1, 2000 with a diagnosis of cholangitis (inflammation of a bile duct). (Tr. 403-404; 518.) Dr. Helling performed a right partial hepatectomy (excision of part of the liver); drainage of collections of bile; and cholangiogram (radiological study of the bile ducts). (Tr. 403; 517.) Plaintiff remained on a ventilator until August 2, and remained hospitalized until August 9. Id. Upon discharge, plaintiff was in good condition, and was instructed to follow a regular diet with

activity as tolerated.  <u>Id.</u>

On July 29, 2003, plaintiff presented to Barnes with a one-day history of fever and chills, nausea, vomiting, and back pain, and was again diagnosed with cholangitis.  (Tr. 1123.)  A cholangiogram was performed on July 31, 2003, and revealed no biliary obstruction.  (Tr. 1124.)  The cholangiogram did reveal a diverticulum (pouch or sac) in the jejunal loop into which plaintiff's bile ducts were emptying.  (Tr. 1126.)  The Radiologist opined that this may explain plaintiff's symptoms.  <u>Id.</u> Plaintiff's condition improved, and he was discharged on August 2, 2003 with the medications Ciprofloxacin,[6] Metronidazole,[7] Percocet,[8] and Colace.[9]  <u>Id.</u>

On December 4, 2003, plaintiff presented to the emergency room of St. Anthony's Medical Center with complaints of lower back pain secondary to sweeping the floor.  (Tr. 1112-13.)  It was indicated that plaintiff was employed full-time by Papa John's. (Tr. 1112.)  Plaintiff denied abdominal pain or any other symptoms.

---

[6]Ciprofloxacin is an antibiotic used to treat or prevent certain infections caused by bacteria.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a688016.html

[7]Metronidazole eliminates bacteria and other microorganisms that cause infections of the gastrointestinal tract and other areas of the body.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a689011.html

[8]Percocet, or Acetaminophen with Oxycodone, is used to relieve moderate to moderately severe pain.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601007.html

[9]Colace is a stool softener used on a temporary basis to relieve constipation.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601113.html

(Tr. 1115.) Lumbar strain was assessed, and plaintiff was discharged with prescriptions for Vicodin,[10] Flexeril,[11] and Motrin.[12] Id.

The Social Security Administration arranged for plaintiff to be seen in consultative examination, and, on December 14, 2004, plaintiff was seen by John E. Emmons, D.O. (Tr. 1103-10.) Plaintiff complained of continuous pain in the left upper and lower quadrants and back. (Tr. 1103.) He reported that he had been married for two years, had two children, and worked part-time as a pizza delivery driver. Id. He reported smoking one pack of cigarettes daily since 1994, and drinking six cans of beer per week. Id.

Physical exam was normal, and multiple well-healed incision scars were noted. (Tr. 1105-06.) Dr. Emmons concluded that plaintiff could walk on level ground; stand for one hour or more without changing positions; sit for extended periods of time (although he was noted to change positions while sitting); lift 15 to 20 pounds with either hand and carry it 50 feet without

---

[10]Vicodin is a combination of the drugs Acetaminophen and Hydrocodone, and is used to relieve moderate to moderately severe pain.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601006.html

[11]Flexeril, or Cyclobenzaprine, is a muscle relaxant used to relax muscles and relieve pain caused by strains, sprains, and other muscle injuries.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682514.html

[12]Motrin, or nonprescription ibuprofen, is used to reduce fever and to relieve mild pain from headaches, muscle aches, arthritis, menstrual periods, the common cold, toothaches, and backaches.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682159.html

difficulty; stoop, kneel and squat without difficulty; and perform fine motor functions for extended periods of time. (Tr. 1107.)

In an Explanation of Determination letter dated January 19, 2005, Kirk Bowman, Jr., M.D. noted plaintiff's medical history and previous determination of disability due to stab wounds and hepatic complications, with residual abdominal wall weakness and complications. (Tr. 1004.) Dr. Bowman indicated that plaintiff had had very little treatment in the last two years. Id. Dr. Bowman noted that plaintiff had an abdominal hernia, but could ambulate independently, and could squat, lift, stand and sit. Id. Dr. Bowman found that plaintiff had normal range of motion and strength. Id. Dr. Bowman opined that medical improvement related to plaintiff's ability to work had occurred. (Tr. 1004.)

In an unsigned Explanation of Determination note dated January 19, 2005, it was opined that, according to plaintiff's vocational profile, he had the ability to adjust to unskilled work, and that appropriate jobs for him would be surveillance system monitor; call-out operator (retail); and weight tester (paper and pulp recycling). (Tr. 1005.)

On January 21, 2005, Dr. Bowman completed a physical RFC assessment.[13] (Tr. 1049-56.) Dr. Bowman opined that plaintiff

_____

[13]In her decision, the ALJ indicates that this January 21, 2005 RFC assessment was performed by "Robert Taxman, M.D." (Tr. 19.) Review of the report, however, reveals that it was signed by "Kirk Bowman Jr. M.D." and reviewed and "affirmed as written with no changes" by Jean J. Diemer, M.D., F.A.A.P., on March 7, 2005. (Tr. 1056). The undersigned finds that the ALJ's use of the name "Dr. Taxman" is no more than a harmless typographical error, inasmuch as she correctly noted the doctor's findings. See Quaite v.

-11-

could occasionally lift 20 pounds and frequently lift 10; stand and/or walk for at least two hours in an eight-hour day; sit for six hours, and push and/or pull without limitation. (Tr. 1050.) Dr. Bowman noted that plaintiff's treating physician had previously indicated that plaintiff's ability to lift or strain was limited, but he expected plaintiff to be able to return to work in the future. (Tr. 1050-51.) Dr. Bowman found no postural or manipulative limitations, or any other such limitations. (Tr. 1051-53.)

Dr. Bowman wrote that plaintiff complained of abdominal weakness and daily pain, but took no pain medications and only rested. (Tr. 1054.) Dr. Bowman noted that plaintiff reported being unable to lift over 20 pounds, and that he worked five days per week, part-time, as a pizza delivery driver. Id. Dr. Bowman noted that review of the medical evidence did not support that plaintiff was as limited as he suggested, and determined that plaintiff's statements were only partly credible. Id. Dr. Bowman further noted the aforementioned opinions of Dr. Emmons, and indicated that they were entitled to great weight, inasmuch as Dr. Emmons had conducted a thorough examination of plaintiff, and had the benefit of reviewing prior medical information. (Tr. 1055.) The record indicates that Jean J. Diemer, M.D., F.A.A.P., reviewed

Barnhart, 312 F. Supp. 2d 1195, 1199-1200 (E.D. Mo. 2004) (whether misstatement is typographical error is to be determined by reading misstatement in context of entire opinion.) The undersigned further notes that plaintiff does not note or challenge this error.

the medical evidence, and affirmed Dr. Bowman's report with no changes. (Tr. 1056.)

In a letter to ALJ Pappenfus dated October 28, 2005, Brent D. Matthews, M.D. advised that, subsequent to plaintiff's abdominal surgeries, he had developed a "complex ventral incisional hernia" and would be seen by plastic surgeons on November 7, 2005, and would require a ventral incisional hernia repair after abdominal wall debridement. (Tr. 1100.) Dr. Matthews wrote that plaintiff would have a "prolonged convalescence" following surgery. Id.

III.    The ALJ's Decision

The ALJ in this case found that there was no clear evidence that plaintiff had engaged in substantial gainful activity since January 14, 2000. (Tr. 18; 23.) In so finding, the ALJ noted that, while there was evidence that plaintiff had been working as a pizza delivery person, such work was not at the substantial gainful activity level. (Tr. 18.)

The ALJ found that plaintiff had the severe impairments of hernias and back strain, but that his impairments or combination thereof were not of listing-level severity. (Tr. 19.) The ALJ then analyzed whether there had been medical improvement as shown by a decrease in medical severity. In this analysis, the ALJ noted, inter alia, that plaintiff required treatment only twice in 2003, and not at all in 2004. (Tr. 20, 21.) After analyzing the

evidence of record, the ALJ concluded that plaintiff had medically improved since 2001. (Tr. 20.)

In assessing plaintiff's RFC, the ALJ analyzed plaintiff's credibility, citing Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984) and the corresponding Regulations, and listed the relevant factors therefrom. Id. Following her analysis, the ALJ determined that plaintiff's allegations of continuing disability were inconsistent with the evidence on the record as a whole, and were not credible. (Tr. 21-22.) The ALJ concluded that plaintiff had the RFC to lift and carry up to 10 pounds frequently and 20 pounds occasionally; sit for six hours and stand/walk for at least two hours in an eight-hour work day; and push and pull. (Tr. 24.)

The ALJ found that plaintiff did not have exertional or non-exertional limitations precluding him from performing his past relevant work as a food delivery person, as plaintiff described it in his Work History Report of March 30, 2000. (Tr. 24.) The ALJ concluded that plaintiff's disability ceased as of January 24, 2005 because he could perform his past relevant work and other work by then, and that plaintiff's entitlement to a Period of Disability and Disability Insurance Benefits ceased at the end of March, 2005. Id.

Despite having found plaintiff capable of returning to his past relevant work, the ALJ continued her analysis and determined that, considering plaintiff's age, education, past

-14-

relevant work experience and residual functional capacity, plaintiff could perform the full range of sedentary work, and determined that Rule 201.27 of the Medical Vocational Guidelines ("Guidelines" or "Grids") indicated that a finding of "not disabled" was appropriate.  Id.

## IV. Discussion

The Commissioner conducts periodic review of cases in which disability benefits have been awarded to determine whether "medical improvement" related to the claimant's ability to work has occurred.  Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000) (citing 20 C.F.R. § 404.1594); see also 20 C.F.R. § 416.990.  In such reviews, the crucial questions are whether the claimant's physical condition has improved since the prior award of disability benefits and, if so, whether such "medical improvement" is related to the ability to work.  20 C.F.R. §§ 404.1594(a); 416.994(b). "Medical improvement" is any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision in which the claimant was determined to be disabled.  20 C.F.R. §§ 404.1594(b)(1); 416.994(b)(1)(i).  The claimant bears a "continuing burden" to demonstrate that he is disabled.  Mathews v. Eldridge, 424 U.S. 319, 336 (1976).  No inference is to be drawn from the fact that the claimant was previously granted benefits.  Nelson v. Sullivan, 946 F.2d 1314, 1315 (8th Cir. 1991).

The continuing disability review process is a sequential analysis prescribed in 20 C.F.R. § 404.1594(f) and 416.994(b)(5). First, the Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's disability will be found to have ended. If not, the Commissioner considers whether the disability continues because the claimant's impairment (or combination of impairments) meets or equals the severity of a listed impairment. If so, the claimant's disability will be found to have continued. If not, the Commissioner determines whether there has been a medical improvement (as shown by a decrease in medical severity) and if so, whether that improvement is related to the claimant's ability to work. Upon finding that medical improvement is related to the ability to work, the Commissioner determines whether all of the claimant's current impairments in combination are severe, and if so, whether the claimant has the RFC to perform any of his past relevant work activity. If the claimant is found to be able to perform any such work, the disability will be found to have ceased. 20 C.F.R. § 404.1594(f) and 416.994(b)(5); see also Dixon v. Barnhart, 324 F.3d 997, 1000-01 (8th Cir. 2003).

The Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971); Young o/b/o Trice v. Shalala, 52 F.3d 200 (8th Cir. 1995) (citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)). Substantial evidence is less than a

preponderance, but enough that a reasonable person would find adequate to support the conclusion. Briggs v. Callahan, 139 F.3d 606, 608 (8th Cir. 1998). In evaluating whether substantial evidence supports the decision, this Court must consider evidence which supports the Commissioner's decision, as well as any evidence that fairly detracts from the ALJ's findings. Id.; see also Groeper v. Sullivan, 932 F.2d 1234, 1237 (8th Cir. 1991). However, where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Briggs, 139 F.3d at 608; Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (citing Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989)).

In the case at bar, plaintiff does not challenge the ALJ's finding of medical improvement. Plaintiff does, however, challenge the ALJ's RFC determination, arguing that it was legally insufficient. In support, plaintiff argues that the ALJ failed to properly consider Dr. Emmons' report inasmuch as Dr. Emmons observed that plaintiff was up and down every five to ten minutes. Plaintiff contends that this represents a "sit/stand option." Plaintiff also argues that the ALJ failed to properly consider Dr. Matthews' statement that plaintiff would have a prolonged convalescence after a surgery to be performed in the future. Plaintiff argues that, at the very least, the ALJ should have further developed the record in light of this statement.

Plaintiff also contends that the ALJ failed to properly

-17-

consider past relevant work at step four under the analysis required by Pfitzner v. Apfel, 169 F.3d 566, 568 (8th Cir. 1999). In support, plaintiff argues that the ALJ made no findings regarding the mental demands of plaintiff's past work and how his RFC was affected thereby. Plaintiff finally contends that, due to the existence of the non-exertional impairments of an inability to climb, balance, kneel, crouch, crawl, or stoop, the ALJ's reliance upon the Guidelines was improper, and the testimony of a vocational expert was necessary. In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence on the record as a whole.

A. Credibility Determination

The ALJ in this case discredited plaintiff's allegations of pain and other symptoms precluding all work. Although plaintiff herein does not directly challenge the ALJ's analysis of plaintiff's credibility, he does challenge the RFC determination, and the undersigned will therefore examine the ALJ's credibility determination. See Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) (it is clearly established that, before determining a claimant's RFC, the ALJ must first evaluate the claimant's credibility).

The Eighth Circuit has recognized that, due to the subjective nature of physical symptoms, and the absence of any reliable technique for their measurement, it is difficult to prove, disprove or quantify their existence and/or overall effect.

-18-

<u>Polaski</u>, 739 F.2d at 1321-22.  In <u>Polaski</u>, the Eighth Circuit addressed this difficulty and set forth the following standard:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions.

> <u>Id.</u> at 1322.

Although the ALJ may not accept or reject the claimant's subjective complaints based solely upon personal observations, he may discount such complaints if there are inconsistencies in the evidence as a whole.  <u>Id.</u>  The "crucial question" is not whether the claimant experiences symptoms, but whether his credible subjective complaints prevent him from working.  <u>Gregg v. Barnhart</u>, 354 F.3d 710, 713-14 (8th Cir. 2003).  The foregoing <u>Polaski</u> factors are to be considered in addition to the objective medical evidence of record.  <u>See</u> <u>Baldwin v. Barnhart</u>, 349 F.3d 549, 558 (8th Cir. 2003).  When an ALJ considers the <u>Polaski</u> factors and discredits a claimant's subjective complaints for a good reason, that decision should be upheld.  <u>Hogan v. Apfel</u>, 239 F.3d 958, 962 (8th Cir. 2001).  The claimant's credibility is primarily for the

ALJ to decide, and this Court's examination of the ALJ's decision is deferential. <u>Tellez</u>, 403 F.3d at 957.

As noted, <u>supra</u>, the ALJ in this case cited <u>Polaski</u> and the corresponding Regulations, and listed the relevant factors therefrom. The ALJ then thoroughly reviewed the evidence of record and noted numerous inconsistencies in the record to support the conclusion that plaintiff was not entirely credible.

The ALJ noted that, other than plaintiff's wife, there were few third-party observations corroborating plaintiff's complaints. The ALJ also noted that, while plaintiff alleged debilitating back pain, he took no pain medication. A lack of strong prescription pain medication is inconsistent with subjective complaints of disabling pain. <u>Rankin v. Apfel</u>, 195 F.3d 427, 430 (8th Cir. 1999); <u>Haynes v. Shalala</u>, 26 F.3d 812, 814 (8th Cir. 1994).

The ALJ also noted that plaintiff received very little treatment in 2003; no treatment in 2004; and submitted little evidence of treatment in 2005. A lack of regular and sustained treatment is a basis for discounting complaints of disabling symptoms. <u>Novotny v. Chater</u>, 72 F.3d 669, 671 (8th Cir. 1995).

Noting that the objective medical evidence was relevant to the consideration of the credibility of plaintiff's subjective complaints, the ALJ noted that the examination of Dr. Emmons was not particularly remarkable. The ALJ noted that Dr. Emmons found well-healed surgical scars; only minor guarding of the abdomen; no

-20-

CVA tenderness; an easily reducible hernia; virtually full range of motion of the spine; a normal gait; and the ability to kneel, squat and arise. The ALJ noted that plaintiff did not have the limitation of motion, spasm, sensory deficit, or motor disruption which may serve as objective evidence of severe back pain.

Following the foregoing analysis, the ALJ concluded that plaintiff's back pain was not as intense and persistent as he alleged. While the lack of objective medical evidence is not dispositive, it is an important factor, and the ALJ is entitled to consider the fact that there is no objective medical evidence to support the degree of alleged limitations. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); Kisling v. Chater, 105 F.3d 1255, 1257-58 (8th Cir. 1997); Cruse, 867 F.2d at 1186 (the lack of objective medical evidence to support the degree of severity of alleged pain is a factor to be considered); Johnson v. Chater, 87 F.3d 1015, 1017-18 (8th Cir. 1996) (it is proper for an ALJ to consider the lack of reliable medical opinions to support a claimant's allegations of a totally disabling condition; in fact, this was noted to be the "strongest support" in the record for the ALJ's determination).

A review of the ALJ's credibility determination shows that, in a manner consistent with and required by Polaski, she considered plaintiff's subjective complaints on the basis of the entire record before her, and set forth numerous inconsistencies detracting from plaintiff's credibility. An ALJ may disbelieve

subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). Because the ALJ considered the Polaski factors and discredited plaintiff's subjective complaints for a good reason, that decision should be upheld. Hogan, 239 F.3d at 962.

B.   Residual Functional Capacity

As noted above, the ALJ in this case determined that plaintiff retained the RFC to lift and carry up to 10 pounds frequently and 20 pounds occasionally; and sit for six hours and stand/walk for two hours in an eight-hour work day. Plaintiff challenges this finding, arguing that the ALJ failed to properly consider Dr. Emmons' statement that plaintiff changed positions every five to ten minutes while sitting, and failed to properly consider Dr. Matthews' opinion and further develop the record in light thereof. Review of the record, however, reveals the ALJ properly determined plaintiff's RFC.

In determining plaintiff's RFC, the ALJ noted that, in May of 2001, Dr. Strasberg had projected that plaintiff would be able to return to work very soon, and that there was no medical evidence to the contrary. The ALJ also noted that the reports of the consultative physicians showed that plaintiff regained the ability to perform sedentary work and a partial range of light work. The ALJ afforded these assessments great weight, noting that they were consistent with the medical evidence of record and were not contradicted by other assessments. The ALJ further noted that

the assessments were consistent with Dr. Strasberg's prior statement that plaintiff was unable to perform heavy work, and gave Dr. Strasberg's opinion to that effect great weight.  The ALJ also noted that no physician, Dr. Matthews included, had opined that plaintiff was unable to perform any work.  In addition, the undersigned notes that Dr. Emmons performed a thorough physical examination, and that Drs. Bowman and Diemer later reviewed Dr. Emmons' report along with the other medical evidence of record.  An ALJ is entitled to afford great weight to medical assessments that are well-supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in the record.  See  Hogan, 239 F.3d at 961.

The ALJ also noted the lack of any current reports from any acceptable medical source evidencing plaintiff's inability to work.  Furthermore, as discussed above, the ALJ noted that Dr. Emmons' findings upon exam were "not particularly remarkable" and revealed no evidence of a serious impairment.  (Tr. 21); See Battles, 902 F.2d at 659 (ALJ properly denied benefits to claimant who had no medical evidence indicating a serious impairment during the relevant time).

The ALJ also noted that, despite his allegations of disabling impairments, plaintiff received very little treatment in 2003; no treatment in 2004; and submitted little evidence of treatment in 2005.  The lack of ongoing medical treatment is an indication that plaintiff's impairments are non-severe and not

significantly limiting for twelve continuous months.  Novotny, 72
F.3d at 671.

The ALJ also noted that plaintiff had, prior to his
injury, worked as a pizza delivery person, and that he had resumed
this work on at least a part-time basis after his injury and
surgeries.  The performance of part-time work may be considered as
demonstrating an ability to perform substantial gainful activity.
Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) (citing
Browning, 958 F.2d at 821).  Furthermore, the undersigned notes
that plaintiff testified that he provided care for his very young
child on a daily basis, and also took care of household chores.
The performance of such activities weighs against a finding that
plaintiff is completely disabled and unable to perform any work.
See Goff v. Barnhart, 421 F.3d 785 (8th Cir. 2005) (ALJ properly
determined claimant was not disabled where record demonstrated that
claimant persistently worked as a part-time kitchen aide during the
claimed period of disability; performed household chores; did not
take prescribed medications for pain; and had negative examinations
and objective testing results.)

Plaintiff argues that the ALJ's RFC determination fails
to properly state the limitations outlined in Dr. Emmons' report;
specifically, Dr. Emmons' observation that plaintiff changed
positions while sitting.  Plaintiff argues that this statement
represented Dr. Emmons' opinion that plaintiff required a
"sit/stand option".  The undersigned disagrees.

In his report, Dr. Emmons wrote as follows:

> I believe within a reasonable degree of medical certainty after review of the available records, today's interview and today's examination, that this gentleman is able to walk on level ground without difficulty, that he is able to stand for 1 hour or more without changing positions, and that he is able to sit for extended periods, although he is noted to change positions every 5 to 10 minutes when doing so. I believe within a reasonable degree of medical certainty that he is able to lift 15 to 20 pounds with either hand and carry it 50 feet without difficulty. I believe within a reasonable degree of medical certainty that he is able to stoop, kneel and squat without difficulty. I believe within a reasonable degree of medical certainty that he is able to see and hear normally, and that he is able to perform fine motor functions with both upper extremities for extended periods of time.

(Tr. 1107.)

The ALJ did not fail to properly consider Dr. Emmons' report in formulating plaintiff's RFC. While Dr. Emmons indeed noted that plaintiff "changed positions" every five to ten minutes while sitting, Dr. Emmons did not indicate how plaintiff changed positions; whether he simply shifted in his seat or whether he actually alternated between standing and sitting. Dr. Emmons' explicit opinion on plaintiff's ability to sit was that he was "able to sit for extended periods." <u>Id.</u> Furthermore, the undersigned notes that, when asked about his ability to sit, plaintiff did not testify that he had to alternate between sitting and standing, and did not testify that he needed to change positions while sitting. <u>See</u> (Tr. 1147.) In fact, plaintiff

-25-

testified that he spent time sitting in front of the computer doing sports-related things, corresponding with others, researching taking classes over the Internet, and trying to get free things from the Internet. (Tr. 1147-48.)

Dr. Emmons' opinion regarding plaintiff's abilities and limitations was very specific. It is unreasonable to conclude that Dr. Emmons had the opinion that plaintiff required something in the nature of a sit/stand option and failed to explicitly provide for it in his report. The ALJ did not err in failing to interpret Dr. Emmons' observation that plaintiff changed positions as a requirement that plaintiff's RFC include a "sit/stand option."

Plaintiff next alleges error in the ALJ's treatment of the letter from Dr. Matthews, wherein he indicated that plaintiff would have a prolonged convalescence following hernia repair surgery to be performed in the future. Plaintiff asserts that the essence of Dr. Matthews' letter was that plaintiff would be incapable of working subsequent to surgery and recovery. The undersigned finds no error in the ALJ's treatment of Dr. Matthews' opinion.

The Regulations define the term "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(C). Dr. Matthews'

statement was not evidence tending to prove or disprove disability as such is defined in the Social Security Act.. Dr. Matthews' statement was an estimate that plaintiff would have a "prolonged" recovery period following surgery that may be scheduled and performed in the future. Such a statement cannot be interpreted as probative evidence of a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. Furthermore, as the ALJ noted, Dr. Matthews did not opine that plaintiff was currently unable to work. The ALJ therefore did not err in her treatment of Dr. Matthews' statement.

### 1. Fully and Fairly Develop the Record

Plaintiff next contends that the ALJ erred inasmuch as she failed to fully and fairly develop the record with respect to Dr. Matthews' opinion, and also suggests that the ALJ erred by not re-contacting Dr. Matthews. The undersigned disagrees.

It is well-settled law that the ALJ is required to ensure a fully and fairly developed record, especially when, as in this case, the claimant is unrepresented. Nevland v. Apfel, 204 F.3d 853 (8th Cir. 2000) (citing Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983)). Included in this duty is the responsibility of ensuring that the record contains evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue. Nevland, 204 F.3d at 858; see also Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir. 2004). This duty is fulfilled when the record contains sufficient evidence

to allow the ALJ to form an opinion.  <u>Tellez</u>, 403 F.3d at 956-57
(ALJ did not fail to fully and fairly develop the record where
evidence was sufficient to allow him to form an opinion, and where
there was no indication he felt unable to formulate a decision).

In the case at bar, the ALJ, noting that plaintiff was
unrepresented, and also noting that the record contained no current
medical reports assessing plaintiff's current medical condition,
ordered a consultative examination with Dr. Emmons who, as
discussed above, thoroughly examined plaintiff and issued a
comprehensive written report.  Dr. Emmons' report was then
reviewed, along with the other medical information in the file, by
Dr. Bowman, whose report was in turn reviewed and approved by Dr.
Diemer.  There is no indication that the ALJ in this case felt that
the medical information in the record was inadequate to allow her
to make the assessment she did.  Furthermore, as explained above,
that conclusion is supported by substantial evidence.  The
undersigned therefore finds that the ALJ in this case fulfilled her
duty to ensure a fully and fairly developed record.  <u>See</u> <u>Id.</u>

Nor was the ALJ under an obligation to re-contact Dr.
Matthews.  The Regulations provide that the ALJ should re-contact
a physician in some circumstances, such as when the information the
physician provides is unclear or inadequate for the ALJ to
determine whether the claimant is actually disabled.  <u>See</u> 20 C.F.R.
§ 404.1512(e); <u>see</u> <u>also</u> <u>Sultan v. Barnhart</u>, 368 F.3d 857, 863 (8th
Cir. 2004) (ALJ is not required to re-contact a treating physician

when the ALJ is able to determine from the record whether the applicant is disabled). As explained above, the ALJ was able to determine, based upon the medical information in the record, that plaintiff was not disabled. Furthermore, Dr. Matthews' statement in his letter was not unclear; it was, as explained above, not probative evidence of disability. Dr. Emmons thoroughly examined plaintiff and found that plaintiff's hernia was easily reducible, and assessed plaintiff's current abilities and limitations, hernia included. The undersigned therefore determines that the ALJ fulfilled her duty to fully and fairly develop the record, and was under no obligation to re-contact Dr. Matthews.

A review of the ALJ's RFC determination reveals that she properly exercised her discretion and acted within her statutory authority in evaluating the evidence of record as a whole. The ALJ did not err in her treatment of the opinions of Drs. Emmons or Matthews. The ALJ's RFC determination is supported by substantial evidence on the record as a whole.

C. Past Relevant Work

Having found that plaintiff performed work as a food delivery person at the substantial gainful activity level from 1999 to 2000, the ALJ identified this as plaintiff's past relevant work. The ALJ then referenced plaintiff's Work History Report of March 30, 2000, and noted plaintiff's description therein of the specific duties of his food delivery job. Having determined plaintiff's RFC as discussed, supra, the ALJ determined that plaintiff was able to

perform his past relevant work as a food delivery person. Plaintiff challenges this determination inasmuch as the ALJ failed to perform the analysis required by <u>Pfitzner</u>, 169 F.3d 566. In support, plaintiff argues that the ALJ made no findings regarding the mental demands of plaintiff's past work and how his RFC was affected thereby. Plaintiff does not, however, argue that he suffers from a mental impairment, or that he is unable to meet the mental requirements of the job of food delivery person. Review of the record shows that the ALJ properly determined that plaintiff could perform his past relevant work.

An ALJ's decision that a claimant can return to his past work must be based upon more than conclusory statements. <u>Groeper</u>, 932 F.2d at 1238. The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's RFC. 20 C.F.R. §§ 404.1520(f); 416.920(f); <u>Id.</u> at 1238-39. The ALJ must also compare the claimant's RFC with the actual demands of the past work to determine whether the claimant can perform the relevant tasks. <u>Id.</u> at 1239 (citing <u>Kirby v. Sullivan</u>, 923 F.2d 1323, 1326-27 (8th Cir. 1991)). Relevant information is to be obtained from a detailed description of the work obtained from the claimant, his or her employer, or another informed source. <u>Id.</u>; 20 C.F.R. §§ 404.1565, 416.965; <u>see</u> <u>also</u> <u>Zeiler v. Barnhart</u>, 384 F.3d 932, 936 (8th Cir. 2004) (where ALJ relied upon claimant's own description of her past duties in finding that claimant never had to lift more than ten

pounds and stood much of the day, substantial evidence supported the ALJ's characterization of her past work as requiring light exertion.) "An ALJ may find the claimant able to perform past relevant work if the claimant retains the ability to perform the functional requirements of the job as she actually performed it or as generally required by employers in the national economy." Samons v. Astrue, 497 F.3d 813, 821 -822 (8th Cir. 2007) (citing Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)). If, however, the record contains substantial evidence that the claimant can perform his past work, the ALJ's failure to develop the past work record in full detail does not require remand. Battles, 902 F.2d at 659.

According to the Secretary's interpretation of the Regulations, "[a]dequate documentation of past work includes factual information about those work demands *which have a bearing on the medically established limitations*", and "[d]etailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained *as appropriate*." Sells v. Shalala, 48 F.3d 1044, 1046 (8th Cir. 1995) (citing S.S.R. No. 82-62, Soc.Sec.Rep. 809, 811-12 (West 1983)) (emphasis added); see also Groeper, 932 F.2d 1234, 1238 (8th Cir. 1991).

As discussed above, the ALJ in this cause properly determined plaintiff's RFC, and specifically articulated plaintiff's physical limitations. The ALJ also noted plaintiff's

-31-

own description of his past relevant work as a food delivery person "in his original Work History Report, which he signed on March 30, 2000." (Tr. 22.) Having referenced that report, the ALJ then articulated the requirements of plaintiff's past relevant work as he had performed it, noting that it involved lifting and carrying less than ten pounds and primarily sitting, and did not involve standing and walking more than two hours in a work day. The ALJ then wrote "[t]he claimant does not have any limitations that prevent him from performing his past relevant work as a food delivery person as he performed it." Id.

The ALJ did not conduct an analysis of the mental demands of plaintiff's past work because mental impairments were not at issue in this case, and therefore had no "bearing on the medically established limitations." See Sells, 48 F.3d at 1046; Groeper, 932 F.2d at 1238. Plaintiff's reliance on Pfitzner is thus misplaced. There, the claimant had alleged disability due to mental and physical impairments, and the record contained evidence of mental impairments. Pfitzner, 169 F.3d at 568. In finding error, the Eighth Circuit noted that the ALJ had failed to specifically articulate the claimant's residual functional capacity, and also failed to make any findings regarding the relevant job requirements of the claimant's past relevant work. Id. at 569. In this case, plaintiff did not allege a mental impairment, and does not argue that he is unable to perform the mental demands of his past work. In fact, in response to questioning from the ALJ during the

hearing, plaintiff specifically testified that he was not alleging a mental impairment. The ALJ was therefore under no obligation to make explicit findings regarding the mental demands of plaintiff's past work, inasmuch as they had no bearing on the medically established limitations at issue in this case. See Sells, 48 F.3d at 1046; Groeper, 932 F.2d at 1238.

C.   Vocational Expert Testimony

As noted above, the ALJ in this case determined that plaintiff retained the RFC to perform his past work. Nevertheless, the ALJ continued her analysis and determined that, considering plaintiff's age, education, past relevant work experience and residual functional capacity, plaintiff could perform the full range of sedentary work, and used the Guidelines to direct a finding of "not disabled." Plaintiff challenges this decision, inasmuch as the ALJ improperly relied upon the Guidelines despite the presence of the non-exertional impairments of his inability to climb, balance, kneel, crouch, crawl and stoop. Plaintiff argues that the presence of these non-exertional impairments required the ALJ to elicit vocational expert testimony. While vocational expert testimony is not required when the plaintiff can do his past relevant work, regardless of whether non-exertional impairments exist, See Gaddis v. Chater, 76 F.3d 893, 895 (8th Cir. 1996); Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir. 1994); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990), the undersigned herein addresses plaintiff's argument, inasmuch as the ALJ continued her

analysis past step four. Examination of the ALJ's decision reveals no error.

When only exertional impairments are present, the ALJ may rely upon the Guidelines to meet her burden of showing that the claimant is able to engage in work that exists in the national economy. Bolton v. Bowen, 814 F.2d 536, 537 n.3 (8th Cir. 1987). In the presence of non-exertional impairments, however, the ALJ may rely upon the Guidelines only if she makes a finding, supported by the record, that the non-exertional impairment does not significantly diminish plaintiff's residual functional capacity to perform the full range of activities listed in the Guidelines. Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir. 1988). Absent such a finding, the Guidelines do not control, and the ALJ must call a vocational expert or produce other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's abilities. Sanders v. Sullivan, 983 F.2d 822, 823 (8th Cir. 1992); Thompson, 850 F.2d at 350. The Eighth Circuit has provided some guidance in applying this standard:

> In this context "significant" refers to whether the claimant's non-exertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. Under this standard isolated occurrences will not preclude use of the Guidelines, however persistent non-exertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines

> will preclude the use of the Guidelines to
> direct a conclusion of disabled or not
> disabled. For example, an isolated headache
> or temporary disability will not preclude the
> use of the Guidelines whereas persistent
> migraine headaches may be sufficient to
> require more than the Guidelines to sustain
> the [Commissioner's] burden.

Thompson, 850 F.2d at 350.

In this case, the undersigned concludes that the ALJ's use of the Guidelines was proper. The ALJ made a specific finding, supported by the record, that plaintiff had no (exertional or) non-exertional impairments preventing him from performing his past work. (Tr. 24.) Furthermore, as discussed supra, the ALJ discredited plaintiff's allegations of pain and other symptoms precluding all work after undertaking the proper analysis. Considering plaintiff's age, education, past work experience, and the ALJ's proper decision to discount plaintiff's subjective symptoms of disabling impairments, the undersigned cannot say that the ALJ erred in failing to elicit the testimony of a vocational expert. "Use of the Guidelines is appropriate if the ALJ explicitly discredits subjective allegations of pain for a legally sufficient reason, such as inconsistencies in the record." Bolton, 814 F.2d at 538 (citing Millbrook v. Heckler, 780 F.2d 1371, 1373 (8th Cir. 1985)); Tucker v. Heckler, 776 F.2d 793, 796 (8th Cir. 1985). The ALJ's decision to rely upon the Guidelines and not call a vocational expert is supported by substantial evidence on the record as a whole.

Therefore, for all of the foregoing reasons, the Commissioner's decision is hereby found to have been supported by substantial evidence on the record as a whole, and should therefore be affirmed. Because there is substantial evidence to support the decision, this Court may not reverse merely because substantial evidence may support a different outcome, or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001); Browning, 958 F.2d at 821.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner be affirmed, and that plaintiff's Complaint be dismissed with prejudice.

Judgment shall be entered accordingly.

_Frederick R. Buckles_
FREDERICK R. BUCKLES
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of September, 2008.